**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER GENOVESE, | ) | CASE NO. 1:24-CV-00242-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Christopher Genovese ("Genovese" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 8). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On April 19, 2019, Claimant filed an application for DIB, alleging a disability onset date of November 1, 2018. (ECF No. 9, PageID #: 43). The application was denied initially and upon reconsideration, and Genovese requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On April 3, 2023, an ALJ held a hearing, during which Genovese, represented by counsel, and an impartial vocational expert testified. (*Id.*). On April 28, 2023, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 43-54). The ALJ's decision became

final on December 27, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 34).

On February 8, 2024, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12). Claimant asserts the following assignment of error:

> The ALJ found that Mr. Genovese retained the residual functional capacity for a limited range of light work activity. This finding is unsupported by substantial evidence because the ALJ failed to conduct an adequate evaluation of Mr. Genovese's complaints of disabling symptoms.

(ECF No. 10 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant stated the following in the hearing testimony and supplemental report (3E). The claimant cannot work due to significant upper and lower back pain (including the neck) that radiates with pain, numbness, and weakness through the upper and lower extremities; muscle spasms; secondary insomnia; and depressed and anxious moods with irritability and inattentiveness. The pain and related symptoms are exacerbated by physical activity and vibration. The claimant is able to do all personal care tasks, but he does not do most domestic chores (his fiancé performs them), and he often lacks the motivation and strength to complete them. The claimant is able to do some mentally demanding tasks, such as drive, shop for necessities, watch TV, and attend social activities with friends and family, but he has trouble with managing his personal finances, and he has difficulty leaving the home because being in public exacerbates the anxiety. The claimant also has trouble with lifting and carrying weight, ambulating for even brief periods or short distances, maintaining and transitioning between postures, balancing, using his hands, concentrating, and completing tasks. The claimant lies down, applies cold, or rests to relieve these symptoms, and he also uses a nonprescription cane to help with ambulation. The claimant's pain and related symptoms are treated with pain management medications, and his doctor recommended nerve block injections. The claimant's mental impairments have been treated with psychotherapy and psychotropics, and the medications do not cause any significant side effects.

(ECF No. 9, PageID #: 49).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms in support of her RFC finding:

> The evidence of record supports a finding that the claimant's pain-related impairments impose limitations consistent with the ability to perform a reduced range of light work, but this evidence does not warrant greater limitations than those accommodated in the above determination. During treatment prior or proximate to the date last insured, the claimant repeatedly showed signs of restricted range of motion and tenderness in the cervical and lumbar spines, paraspinal muscle spasms, and (occasionally) slight weakness and numbness in the upper and lower extremities; however, the claimant consistently ambulated normally and showed no signs of gross mechanical anomalies or sensorimotor deficits throughout the body, and without documented difficulty performing most orthopedic maneuvers (1F, 14, 22, 27; 7F, 16-17; 8F, 8, 12; 10F, 6; 13F, 23, 30, 35-36, 46, 53, 58-59, 81, 102, 121, 124, 142, 150, 156). Diagnostic laboratory tests generally revealed mild degenerative changes with spondylosis in the lumbar spine and mild-to-moderate degenerative changes with spondylosis and moderate foraminal stenoses in the cervical spine, which is consistent with some degree of cervical radiculopathy (10F, 3-4; 13F, 19-20, 82, 90, 231-235, 242-246, 258-259, 288-292; 17F, 25). Although MRIs shortly before the date last insured revealed moderate canal stenoses and severe foraminal stenoses in the cervical spine, these worsened abnormalities were not clinically correlated by corresponding increased signs in the treatment notes prior to the date last insured (Id.). The claimant's pain and related symptoms were treated conservatively with medications and physical therapy (1F, 15; 4F, 6; 13F, 22, 75, 92, 122). There is no indication from the record that the claimant's spinal disorders warrant surgical intervention.
>
> The evidence of record supports a finding that the claimant's mental impairments cause moderate cognitive limitations, but no notable social or adaptive limitations. During treatment prior to the date last insured, the claimant repeatedly showed signs of depressed and anxious moods, flat affect, irritability, racing or circumstantial thoughts, and rare episodes of slowed cognition and reduced insight / judgment; however, the claimant also consistently appeared grossly mentally normal and stable, showing no signs of acute behavioral problems, communication deficits, loss of orientation, compromised thought processes or processing speed, active suicidal ideation, or psychosis (11F, 9; 12F, 7, 14, 21, 30, 38, 46, 55, 64, 73, 81, 90, 98, 107, 116, 124, 133, 142, 152; 13F, 30, 35, 59, 81, 90; 15F, 6). Although some records indicate the claimant reported experiencing hallucinations (e.g., 12F, 73), the records do not corroborate indicia of psychosis consistent with these complaints. Further, the findings of abnormal insight/judgment and irritability, which could support moderate social and adaptive limitations, do not cause such limitations in this case because of the claimant's admitted ability to socialize well with persons close to him (including his girlfriend) on a regular basis, and because

3

of the claimant's cooperative behavior during treatment and exams. Additionally, the claimant's psychological symptoms were treated conservatively with outpatient psychotherapy and psychotropic medications, which does not support a finding of marked or extreme limitations in any area of mental functioning (9F, 19; 11F; 12F; 13F, 22, 92; 14F, 1). The claimant did not require any emergency or inpatient psychiatric treatment for psychological symptoms during the period under adjudication.

(ECF No. 9, PageID #: 49-50).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2018, through his date last insured of December 31, 2021 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spines with ankylosing spondylitis, depression, anxiety, and ADHD (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with the following additional limitations: occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently balance; occasionally stoop; no limitations with kneeling, crouching, and crawling; occasionally operate dangerous moving equipment such as power saws and jack hammers; no memory limits; and able to perform work at tasks that do not require hourly piece rate type work.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

. . .

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in

4

significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2018, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(g)).

(ECF No. 9, PageID #: 45-46, 48, 52-54).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc.*

5

*Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Similarly, an ALJ's decision cannot be upheld, "even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal, arguing that the ALJ's finding that Claimant could perform a limited range of light work was "unsupported by substantial evidence because the ALJ failed to conduct an adequate evaluation of [his] complaints of disabling symptoms." (ECF No. 10 at 12). Claimant asserts that he "testified to physical and mental health issues that significantly reduce his ability to perform work-related activities" and "[t]he record contains the results of clinical and diagnostic testing which support the severity of [his] symptoms." (*Id.* at 14). Claimant argues that the ALJ used boilerplate language in finding that his statements concerning his symptoms were not supported by the record and "provided a very limited analysis to support her conclusion." (*Id.* at 16). Claimant takes the position that the ALJ "failed her responsibility to build an 'accurate and logical bridge between the evidence and the result.'" (*Id.* at 17 (quoting *Fleischer*, 774 F. Supp. 2d at 877)).

The Commissioner responds that no compelling reason exists to disturb the ALJ's analysis of Claimant's subjective complaints. (ECF No. 12 at 10). The Commissioner asserts that the ALJ properly considered evidence that Claimant "ambulated normally, showed no signs of gross mechanical anomalies or sensorimotor deficits and his diagnostic tests generally revealed mild to moderate findings;" Claimant was treated conservatively; and while Claimant "had moderate cognitive limitations, he had no notable social or adaptive limitations." (*Id.* at 10-11). Additionally, the Commissioner argues that substantial evidence supports the ALJ's RFC finding concerning Claimant's physical limitations because the ALJ relied on the State agency opinions in crafting the RFC. (*Id.* at 13). The Commissioner asserts that while Claimant "might disagree with the ALJ's weighing of the evidence, . . . he fails to demonstrate that the ALJ's analysis was unsupported by substantial evidence." (*Id.* at 18).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court

gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ concluded that Claimant could perform a reduced range of light work. (ECF No. 9, PageID #: 50). The ALJ found that Claimant's statements concerning his symptoms were not fully credible because the record evidence did "not warrant greater limitations" than those set forth in the RFC. (ECF No. 9, PageID #: 49). In making this decision, the ALJ indicated that Claimant "consistently ambulated normally and showed no signs of gross mechanical anomalies or sensorimotor deficits throughout the body;" diagnostic tests revealed only mild to moderate problems; and Claimant was treated conservatively with medications and physical therapy. (*Id.* at PageID #: 50).

The Court finds merit in Claimant's argument that the ALJ failed to build an accurate and logical bridge between the evidence and the result. While the ALJ stated that Claimant "consistently" ambulated normally and diagnostic tests showed only mild to moderate problems, records cited by the ALJ contradict these findings. Specifically, in November 2021, Claimant had an "abnormal tandem gait," appeared in distress, and complained of worsening pain for the last year. (*Id.* at PageID #: 1233-34). This prompted Claimant's provider to order an MRI "to rule out worsening stenosis," indicating that "if stenosis has progressed, may consider spine intervention." (*Id.*). The subsequent MRI (performed less than a month after the date last insured) indicated that Claimant's previously "mild to moderate spinal canal and neural foramina" had indeed progressed to "moderate spinal canal and severe neural foramina." (*Id.* at PageID #: 1430). The ALJ

9

discounted this evidence because "these worsened abnormalities were not clinically correlated by corresponding increased signs in the treatment notes prior to the date last insured." (*Id.* at PageID #: 50). But this statement is contradicted by the November 2021 medical record documenting Claimant's distress, complaints of increased pain, and abnormal gait. (*Id.* at PageID #: 1233-34).

Turning to the ALJ's reliance on Claimant's need for only conservative treatment, the ALJ cited six records to support this finding, including (1) a referral to physical therapy, (2) notes from a physical therapy visit, (3) notes from a subsequent follow up with Claimant's physician, and (4) three lists of medications prescribed to Claimant. (*Id.* at PageID #: 828, 910, 1220, 1273, 1290, 1320). However, the medication lists simply identify what was prescribed without any indication of whether Claimant obtained any relief from the medications. *See* SSR 16-3p, 2017 WL 5180304, at *8 (advising an ALJ to consider "[t]he type, dosage, *effectiveness*, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms" (emphasis added)). And while Claimant was referred to physical therapy, the cited physical therapy notes indicate that Claimant "demonstrated extreme pain" during sessions, was "very limited due to extreme pain levels and inability to tolerate lying positions or activity," and needed to follow up with his primary care provider because the therapist did not believe he could "progress in PT unless pain levels are somewhat subsided." (ECF No. 9, PageID #: 910). The subsequent follow-up notes recognize that Claimant had a "suboptimal response" to physical therapy. (*Id.* at PageID #: 1320); *see* SSR 16-3p, 2017 WL 5180304, at *8 (indicating that an ALJ should consider "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms").

Overall, the ALJ failed to build a logical bridge from the cited evidence showing Claimant's impairments were worsening to her conclusion that Claimant's pain was not as severe as alleged. Accordingly, remand is required. *See Fleischer*, 774 F. Supp. 2d at 877.

## VI. Conclusion

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: August 20, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE